1  Dale M. Cendali (*pro hac vice* pending)
   dale.cendali@kirkland.com
2  Joshua L. Simmons (*pro hac vice* pending)
   joshua.simmons@kirkland.com
3  Shanti Sadtler Conway (*pro hac vice* pending)
   shanti.conway@kirkland.com
4  Megan L. McKeown (*pro hac vice* pending)
   megan.mckeown@kirkland.com
5  KIRKLAND & ELLIS LLP
   601 Lexington Avenue
6  New York, NY 10022
   Telephone: (212) 446-4800
7  Facsimile: (212) 446-4900

8  Sharre Lotfollahi (S.B.N. 258913)
   sharre.lotfollahi@kirkland.com
9  KIRKLAND & ELLIS LLP
   333 South Hope Street
10 Los Angeles, CA  90071
   Telephone:  (213) 680-8400
11 Facsimile:  (213) 680-8500

12 *Attorneys for Defendant Epic Games, Inc.*

13                    **UNITED STATES DISTRICT COURT**

14                    **CENTRAL DISTRICT OF CALIFORNIA**

15                         **WESTERN DIVISION**

| | |
|---|---|
| 16  ALFONSO RIBEIRO, | CASE NO. 2:18-cv-10412-CJC (RAOx) |
| 17           Plaintiff, | The Honorable Cormac J. Carney |
| 18      v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 19  EPIC GAMES, INC., and DOES 1 THROUGH 50, | **DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND SPECIAL** |
| 20           Defendants. | **MOTION TO STRIKE (ANTI-SLAPP) PLAINTIFF'S COMPLAINT** |
| 21 | |
| 22 | Complaint Filed:  December 17, 2018 |
| 23 | Hearing Date:   April 22, 2019 |
| 24 | Time:            1:30 p.m. |
| 25 | Courtroom:       7C, 350 W. 1st Street |

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................1

II.    STATEMENT OF ALLEGED FACTS.................................4

III.   LEGAL STANDARDS..........................................................6

IV.   ARGUMENT ........................................................................7

     **A.**    **Plaintiff Cannot State a Claim for Copyright Infringement .....7**

          1.    Plaintiff's Movements Are Not Protected by Copyright.....10

          2.    Plaintiff's Movements Are Mere Ideas...............................14

          3.    The Works Are Not Substantially Similar...........................15

     **B.**    **Plaintiff's Remaining Claims Are Preempted by the Copyright Act** ........................................................................17

     **C.**    **Plaintiff's Right of Publicity Claims Violate the First Amendment**........................................................................19

     **D.**    **Rogers v. Grimaldi Principles Bar Plaintiff's Unfair Competition Claims** ......................................................22

     **E.**    **Plaintiff Is Not Entitled as a Matter of Law to Several Forms of Relief Requested in the Complaint** ..........................24

V.    CONCLUSION .................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
   88 F. Supp. 2d 226 (S.D.N.Y. 2000) ...................................................... 11

*Abbywho, Inc. v. Interscope Records*,
   No. 06 Civ. 0672, 2008 WL 11406099 (C.D. Cal. Jan. 7, 2008) ........................... 24

*Apple Comput., Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ............................................................ 15

*Aquarius Broad. Corp. v. Vubiquity Entm't Corp.*,
   No. 2:15 Civ. 01854, 2016 WL 7165728 (C.D. Cal. June 30, 2016) ....................... 19

*Arenas v. Shed Media U.S. Inc.*,
   881 F. Supp. 2d 1181 (C.D. Cal. 2011) ........................................... 7, 20, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................... 6

*Baez v. Pension Consulting Alliance, Inc.*,
   No. 2:17 Civ. 01938, 2017 WL 9500979 (C.D. Cal. July 20, 2017) ......................... 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 6

*Bibbero Sys., Inc. v. Colwell Sys., Inc.*,
   893 F.2d 1104 (9th Cir. 1990) ........................................................... 10

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
   803 F.3d 1032 (9th Cir. 2015) ........................................................... 14

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
   No. 2:11 Civ. 5506, 2012 WL 6548505 (C.D. Cal. Dec. 14, 2012) .................... 13, 14

*Blehm v. Jacobs*,
   702 F.3d 1193 (10th Cir. 2012) .......................................................... 15

*Boost Beauty, LLC v. Woo Signatures, LLC*,
   No. 2:18 Civ. 02960, 2018 WL 5099258 (C.D. Cal. Oct. 15, 2018) ......................... 7

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ........................................................ 22, 23

*Brown v. Entm't Merchants Ass'n*,
  131 S. Ct. 2729 (2011).................................................................. 7, 24

*Cabell v. Sony Pictures Entm't, Inc.*,
  425 F. App'x 42 (2d Cir. 2011) ............................................................ 15

*Century Tile, Inc. v. Hirsch Glass Co.*,
  467 F. App'x 651 (9th Cir. 2012)........................................................ 17

*Chey v. Pure Flix Entm't LLC*,
  No. 16 Civ. 164362, 2017 WL 5479640 (C.D. Cal. Feb. 10, 2017) ...................... 9

*Choyce v. SF Bay Area Indep. Media Ctr.*,
  No. 13 Civ. 01842, 2014 WL 2451122 (N.D. Cal. June 2, 2014)........................... 8

*Christianson v. West Pub. Co.*,
  149 F.2d 202 (9th Cir. 1945) ........................................................... 9, 15

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
  97 F.3d 1504 (1st Cir. 1996)........................................................ 10, 13

*Cusano v. Klein*,
  473 F. App'x 803 (9th Cir. 2012)........................................................ 7, 18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)................................................................... 18, 19

*DBC of N.Y., Inc. v. Merit Diamond Corp.*,
  768 F. Supp. 414 (S.D.N.Y. 1991) ........................................................ 11

*de Havilland v. FX Networks, LLC*,
  21 Cal. App. 5th 845, 856 (Ct. App. 2018) ........................................ 7, 21

*Deckers Outdoor Corp. v. J.C. Penney Co.*,
  45 F. Supp. 3d 1181 (C.D. Cal. 2014) .................................................... 19

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008) .............................................................. 25

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008)........................................................ 7, 22

*Entous v. Viacom Int'l, Inc.*,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001) .................................................................. 18

*Express, LLC v. Forever 21, Inc.*,
    No. 09 Civ. 4514, 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) ........................... 10

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................................................... 7, 10

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    654 F.3d 958 (9th Cir. 2011) .................................................................................... 8

*Folkens v. Wyland Worldwide, LLC*,
    882 F.3d 768 (9th Cir. 2018) .................................................................................. 14

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) .............................................................. 8, 13

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) .................................................................................... 7

*Griffin v. Peele*,
    No. 17 Civ. 01153, 2017 WL 8231241 (C.D. Cal. Oct. 18, 2017) ........................ 19

*Hall v. Swift*,
    No. 17 Civ. 6882, 2018 WL 2317548 (C.D. Cal. Feb. 13, 2018) ...................... 6, 16

*Horgan v. Macmillan, Inc.*,
    789 F.2d 157 (2d Cir. 1986) .............................................................................. 11, 12

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
    755 F.3d 1038 (9th Cir. 2014) ................................................................................ 13

*Int'l Biotical Corp. v. Associated Mills, Inc.*,
    239 F. Supp. 511 (N.D. Ill. 1964) ......................................................................... 15

*Kates v. Crocker Nat'l Bank*,
    776 F.2d 1396 (9th Cir. 1985) ................................................................................ 24

*Kirby v. Sega of Am., Inc.*,
    144 Cal. App. 4th 47 (2006) .............................................................................. 20, 22

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ................................................................................ 17

*Laws v. Sony Music Entm't, Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ........................................................... 17, 18

*Lesley v. Spike TV*,
    241 F. App'x 357 (9th Cir. 2007) ............................................................ 8

*Lewis v. Activision Blizzard, Inc.*,
    634 F. App'x 182 (9th Cir. 2015) ........................................................... 18

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ................................................. 18

*Lorenzana v. S. Am. Rests. Corp.*,
    799 F.3d 31 (1st Cir. 2015) ..................................................................... 10

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) .......................................................... 7, 18

*Marcus v. ABC Signature Studios, Inc.*,
    279 F. Supp. 3d 1056 (C.D. Cal. 2017) ................................................. 19

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
    495 F. Supp. 2d 1044 (S.D. Cal. 2007) ................................................. 17

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
    724 F.2d 357 (2d Cir. 1983) ................................................................... 15

*Metrano v. Twentieth Century Fox Film Corp.*,
    No. 08 Civ. 086314, 2009 WL 10672576 (C.D. Cal. July 16, 2009) ..................... 24

*Mitchell v. Cartoon Network, Inc.*,
    No. 15 Civ. 5668, 2015 WL 12839135 (D.N.J. Nov. 20, 2015) ...................... 20, 21

*Naruto v. Slater*,
    No. 15 Civ. 04324, 2016 WL 362231 (N.D. Cal. Jan. 28, 2016) ........................... 13

*Novalogic, Inc. v. Activision Blizzard*,
    41 F. Supp. 3d 885 (C.D. Cal. 2013) ................................................. 22, 23

*Pelt v. CBS, Inc.*,
    No. 92 Civ. 6532, 1993 WL 659605 (C.D. Cal. Oct. 25, 1993) ........................... 13

*Reece v. Island Treasures Art Gallery, Inc.*,
    468 F. Supp. 2d 1197 (D. Haw. 2006) ............................................. 14, 15

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) .................................................................. 8, 9, 14, 15

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ......................................................................... 4, 22

*Roxbury Entm't v. Penthouse Media Grp., Inc.*,
   669 F. Supp. 2d 1170 (C.D. Cal. 2009) ................................................................ 23

*Saregama India Ltd. v. Young*,
   No. 02 Civ. 9856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) ......................... 24

*See v. Durang*,
   711 F.2d 141 (9th Cir. 1983) ............................................................................ 15

*Sivero v. Twentieth Century Fox Film Corp.*,
   No. B266469, 2018 WL 833696 (Cal. Ct. App. Feb. 13, 2018) ...................... 20, 21

*Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*,
   914 F. Supp. 665 (D. Mass. 1995) ...................................................................... 11

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
   845 F.3d 1246 (9th Cir. 2017) ............................................................................ 19

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   No. 16 Civ. 724, 2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016) .............................. 25

*Southco, Inc. v. Kanebridge Corp.*,
   390 F.3d 276 (3d Cir. 2004) ........................................................................ 10, 13

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ............................................................................ 19

*Thomas v. Walt Disney Co.*,
   337 F. App'x 694 (9th Cir. 2009) .......................................................................... 9

*Trenton v. Infinity Broad. Corp.*,
   865 F. Supp. 1416 (C.D. Cal. 1994) .................................................................... 13

*VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*,
   699 F. App'x 667 (9th Cir. 2017) ........................................................................ 24

*White v. Twentieth Century Fox Corp.*,
   572 F. App'x 475 (9th Cir. 2014) .......................................................................... 9

*Wild v. NBC Universal*,
    513 F. App'x 640 (9th Cir. 2013) ........................................................ 9

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) .................................................................. 19

*Wood v. Midland Credit Mgmt., Inc.*,
    No. 05 Civ. 3881, 2005 WL 3159639 (C.D. Cal. July 29, 2005) ........................... 24

*Zekkariyas v. Universal Music-MGB Songs*,
    No. 11 Civ. 2912, 2011 WL 13220325 (C.D. Cal. June 6, 2011) ........................... 13

*Zhang v. Heineken N.V.*,
    No. 08 Civ. 06506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ............... 10, 13

*Zindel v. Fox Searchlight Pictures, Inc.*,
    No. 18 Civ. 1435, 2018 WL 3601842 (C.D. Cal. July 23, 2018) ........................... 6

**Statutes**

17 U.S.C. § 102 ........................................................ 11, 14, 17, 18

17 U.S.C. § 301 ........................................................ 17

17 U.S.C. § 412 ........................................................ 25

Cal. Civ. Code § 3344 ........................................................ 18

Cal. Civ. Proc. Code § 425.16 ........................................................ 1, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................ *passim*

**Other Authorities**

37 C.F.R. § 202.1 ........................................................ 12

37 C.F.R. § 202.1(a) (2018) ........................................................ 13

H.R. Rep. 94-1476 (1976) ........................................................ 11

Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee
    (dated July 14, 2016) ........................................................ 13

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices
(3d ed. 2017) ................................................................................. 10, 11, 12

Defendant Epic Games, Inc. ("Epic Games") submits this memorandum in support of its motion to dismiss pursuant to Federal Rule 12(b)(6) and special motion to strike pursuant to California Code of Civil Procedure 425.16 Plaintiff Alfonso Ribeiro's ("Plaintiff") Complaint (Dkt. No. 1) ("Complaint"). [1]

## I.   INTRODUCTION

The fatal flaw of this lawsuit is that no one can own a dance step or a simple dance routine.  Fundamentally, this suit is at odds with free speech principles as it attempts to impose liability, and thereby chill creative expression, by claiming rights that Plaintiff does not and could not hold.  Moreover, it suffers from a host of issues ranging from a lack of plausible ownership, to a lack of substantial similarity, to preemption by the Copyright Act.  It should be dismissed for several reasons.  ***First***, Plaintiff has failed to plausibly allege ownership of a valid copyright.  Plaintiff admits to creating the alleged "Dance" for the *Fresh Prince of Bel-Air* series, but did not try to register that "Dance" with the Copyright Office—presumably because he knows that he does not own the copyright.  The copyright notice for the episode in which the Complaint alleges the "Dance" first appeared lists solely "National Broadcasting Company, Inc."  Thus, Plaintiff's copyright claims fail as his allegation that the "Dance" was created for an episode owned by NBC means that he has not plausibly alleged ownership of a valid copyright.  Indeed, the Copyright Office knows such performances are not owned by the performers.  When Plaintiff tried to register Variation A of the alleged dance, the Office raised a similar question because it was a performance of Plaintiff on *Dancing with the Stars*, to which it was implausible that

---

[1]   Plaintiff also filed a suit against Take-Two Interactive Software, Inc., 2K Sports, Inc., 2K Games, Inc., and Visual Concepts Entertainment ("Take-Two") asserting infringement of the alleged dance.  Take-Two moved to dismiss on February 13, 2019, making similar challenges to Plaintiff's ownership of the alleged dance, the protectability of the alleged dance, and the viability of Plaintiff's other claims. Dkt. No. 49, *Ribeiro v. Take-Two Interactive Software, Inc.*, No. 2:18-cv-10417 (C.D. Cal.) (Klausner, J.).

1    Plaintiff owned the copyright.[2]

2         **Second,** Plaintiff's copyright claims fail for the independent reason that he

3    cannot establish substantial similarity between his alleged works and *Fortnite* because

4    the movements that are the sole basis for those claims are not protectable.  No one can

5    own a dance step or a simple dance routine.  ***Indeed: the Copyright Office already***

6    ***has rejected Plaintiff's two copyright applications (Variations B and C) that only***

7    ***show the movements at issue (rather than additional content) because each is "a***

8    ***simple dance routine" that "is not registrable as a choreographic work."***  Cendali

9    Decl. Exs. H, K.  Copyright law is clear that no one can own individual dance steps or

10   simple dance routines made up of multiple steps as they are building blocks of free

11   expression, which are not protected by copyright.  Rather, they are in the public

12   domain for choreographers, dancers, and the general public to use, perform, and

13   enjoy.

14        Yet, contrary to the Copyright Office's decisions, Plaintiff seeks to monopolize

15   simple movements by arguing that Epic Games' massive, complex battle royale video

16   game, *Fortnite*, infringes his rights because of its "Fresh" emote (one of hundreds of

17   tiny customizations allowing players' avatars to celebrate on the battlefield).  To be

18   clear, Plaintiff does not claim that *Fortnite's* avatars resemble him or that any other

19   parts of the fanciful game infringe his rights.

20        When considering whether two works are substantially similar, the Ninth

21   Circuit requires courts to filter out the unprotectable elements, and then compare any

22   protectable expression, if any, that remains.  This analysis is critical to the resolution

23   of this case as copyright does not protect individual dance steps or simple dance

24   routines.  This is clear from the long-standing tradition that the building blocks of

25   expression—including words and short phrases, geometric shapes, colors, dance steps,

26

27   [2]   Declaration of Dale M. Cendali, dated Feb. 22, 2019, ("Cendali Decl.") Ex. D.  To

28        Epic Games' knowledge, the Office has not taken action on Variation A because it
         is waiting for Plaintiff's response as to his claimed ownership.

and simple dance routines—are not copyrightable as protecting them would prevent others from creating new works.  In the dance context, this is apparent from (a) the legislative history of the Copyright Act, which expressly states that "simple [dance] routines" are not copyrightable; (b) the Copyright Office's regulations, which do not permit individual dance steps or simple routines to be registered for copyright protection; and (c) Ninth Circuit case law holding that such elements are not protectable, but rather should be free for all to use.  Also, copyright does not protect mere ideas or concepts, but rather only the expression of those ideas.  Plaintiff's movements are just such unprotectable ideas as Ninth Circuit courts have held in similar situations involving movements, choreography, and poses.  As Plaintiff's alleged dance is not protectable, there is nothing to compare to *Fortnite*, and the works necessarily are not substantially similar.

Moreover, even without this dispositive filtering, comparing the three "Variations" and *Fortnite* shows that there is no substantial similarity between the works.  The Variations are (A) Plaintiff performing on *Dancing with the Stars*, (B) Plaintiff appearing on the *Graham Norton Show*, and (C) Plaintiff appearing at the American Century Celebrity Golf Tournament.  Plaintiff only claims infringement for the short movements at issue.  *Fortnite*, by contrast, is a complex battle royale video game with myriad characters, settings, and movements, none of which Plaintiff has accused of infringement.  As a result, the works cannot be substantially similar as a whole.  Further, each variation of the movements at issue is different from Epic Games' "Fresh" emote as the sequence of movements, and the individual movements themselves, differ.  These differences are particularly significant given how short the movements are.

***Third***, Plaintiff's non-copyright claims are equally unavailing.  As a threshold matter, under California's anti-SLAPP statute, when state law claims are asserted against an expressive work like *Fortnite*, it is ***plaintiff's*** burden to prove a probability

of prevailing to avoid chilling the valid exercise of free speech rights.[3]  Plaintiff cannot do so:

- All of the non-copyright claims involve the same movements and seek to address the same alleged copying as Plaintiff's copyright claims and, thus, they are preempted by the Copyright Act and should be dismissed for this reason alone.

- Plaintiff's right of publicity claims also are barred by the First Amendment under California's Transformative Use test as *Fortnite* has distinctive and expressive content beyond the alleged use of the steps.

- Plaintiff's unfair competition claims are barred by the First Amendment based on *Rogers v. Grimaldi* principles because Fresh is artistically relevant to *Fortnite*, and Plaintiff does not point to any expressly misleading conduct by Epic Games beyond its alleged use of the movements at issue.

***Finally***, although this Court need not reach Plaintiff's requested remedies if his claims are dismissed for the reasons above, Plaintiff's overreaching extends to the remedies he seeks as well.  For example, punitive damages are not available for Copyright Act or Lanham Act claims.  Similarly, California's unfair competition law only provides for the award of restitution, not general damages.  And, because Plaintiff applied to register his copyrights only after the alleged infringement commenced, attorney's fees are not available on his copyright claims.

For the reasons below, Epic Games respectfully requests that the Complaint be dismissed.  Further, as Plaintiff was informed of the bases for this motion and elected not to amend, Epic Games requests that the dismissal be with prejudice.

## II.    STATEMENT OF ALLEGED FACTS

Plaintiff alleges that he created a dance in 1991 and first performed it on *The Fresh Prince of Bel-Air* during the episode *Will's Christmas Show*.  Compl. ¶ 12.  He did not attempt to register it, likely because he does not own the copyright—the

---

[3]   The Lanham Act claim fails for the same reasons as the state claims.

episode has a copyright notice that lists solely "National Broadcasting Company, Inc." Cendali Decl. Ex. L.  Instead, he recently sought to register three subsequent "Variations," *id.*  Exs. A–K, two of which the Copyright Office has ***refused*** to register due to a lack of copyrightability.[4]  The Office rejected Variation B—a clip from the *Graham Norton Show*, in which the "Dance" appears 12 seconds into the video for 21 seconds, *id.* Ex. F—and Variation C—a video taken during the American Century Celebrity Golf Tournament, in which the "Dance" is performed for six seconds, *id.* Ex. J.  Variation A is a one-minute, 20-second routine that Plaintiff performed on *Dancing with the Stars*, which includes numerous dance steps not claimed to be infringed here.  *Id.* Ex. B.  Based on the deposit copies Plaintiff submitted for Variations B and C, it appears that the "Dance" at issue appears 54 seconds into the video, and is performed for 10 seconds.

Plaintiff alleges that the "Fresh" emote in *Fortnite* infringes his rights.  Compl. ¶ 1.  In *Fortnite*, up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive.  *Id.* ¶ 19.  The game features an extensive world, in which players explore, build, and destroy, and also battle against each other via player-to-player combat.  *See* Cendali Decl. Ex. M.  Players choose to represent themselves in the game world by picking an avatar and customizing it to better represent them in the game.  *Fortnite*'s avatars feature a variety of human features, non-human features (such as a tomato head or animal head), costumes, and weapons.  *Id.*  They do not

---

[4]  Although Epic Games requested on January 17, 2019 that Plaintiff provide a copy of his copyright applications, the deposit copies, and any correspondence from the Copyright Office, Plaintiff only provided Epic Games with the deposit copies. Epic Games obtained the correspondence reflecting the Copyright Office's refusal to register Variations B and C, and its request for further information regarding Variation A on February 13, 2019, after submitting a Litigation Statement Form LS to the Copyright Office on December 19, 2018.  This is how Defendant learned of the refusals.  Cendali Decl. ¶¶ 2–7.

resemble Plaintiff, as shown below:



After *Fortnite*'s release in 2017, Epic Games continued to make new content available via an "Item Shop" that allows players to purchase customizations for their game avatars.  Compl. ¶ 20.  This includes "emotes," which are movements that an avatar performs to express emotions in the game.  *Id.* ¶ 23.  There have been over a hundred emotes.  Plaintiff alleges that Fresh—which was not included as an emote option until January 2018—violates his rights.  *Id.* ¶ 29.

## III.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The Court must disregard allegations that are legal conclusions, even when disguised as facts."  *Hall v. Swift*, No. 17 Civ. 6882, 2018 WL 2317548, at *3 (C.D. Cal. Feb. 13, 2018).  It, however, may consider works referenced in the Complaint.  *See Zindel v. Fox Searchlight Pictures, Inc.*, No. 18 Civ. 1435, 2018 WL 3601842, at *3 (C.D. Cal. July 23, 2018); Req. J. Notice, at 1.  As discussed below, Plaintiff cannot plead facts sufficient to support his claims.

Moreover, with regard to Plaintiff's state law claims, his pleading failures violate California's anti-SLAPP statute, which subjects to a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech . . . in connection with a public issue."  Cal.

1    Civ. Proc. Code § 425.16(b)(1).  Anti-SLAPP motions require a two-part analysis,

2    both of which are satisfied here.  *First*, the court determines whether "the challenged

3    cause of action arises from activity protected under the statute."  *Baez v. Pension*

4    *Consulting Alliance, Inc.*, No. 2:17 Civ. 01938, 2017 WL 9500979, at *2 (C.D. Cal.

5    July 20, 2017).  "California courts have interpreted this piece of the defendant's

6    threshold showing rather loosely . . . and have held that a court must generally

7    presume the validity of the claimed constitutional right in the first step of the anti-

8    SLAPP analysis."  *Greater L.A. Agency on Deafness, Inc. v. Cable News Network,*

9    *Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (internal quotation marks omitted).[5]  Here, the

10   first step of the analysis is straightforward: the United States Supreme Court has held

11   that "video games qualify for First Amendment protection," *Brown v. Entm't*

12   *Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011),[6] and all of Plaintiff's claims hinge on

13   *Fortnite's* inclusion of the Dance Step, which Plaintiff touts as being a matter of

14   public interest.  *See, e.g.*, Compl. ¶¶ 1–3, 25–27.  Thus, Plaintiff's claims are based on

15   acts taken in furtherance of Epic Games' free speech rights.  *Second*, the burden shifts

16   to the plaintiff to "demonstrate[] a probability of prevailing on the merits of its"

17   claims.  *GLAAD*, 742 F.3d at 425.  Plaintiff cannot satisfy his burden.  *See infra* 17–

18   24.

19   **IV.    ARGUMENT**

20       **A.    Plaintiff Cannot State a Claim for Copyright Infringement**

21         Plaintiff's first and second causes of action assert direct and contributory

22   copyright infringement, respectively.  To state a claim of copyright infringement,

23   Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of

---

24   [5]  Courts routinely find creative works, like video games, satisfy step one.  *See*
25   *Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (collecting cases finding
     first prong satisfied by television programs and video games); *see also Maloney v.*
26   *T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (photographs); *Arenas v. Shed*
     *Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011) (television); *de*
27   *Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 856 (Ct. App. 2018) (same).

     [6]  *See also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099
28   (9th Cir. 2008) (*Grand Theft Auto: San Andreas* video game protected).

1    constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel.*

2    *Serv. Co.*, 499 U.S. 340, 361 (1991).  Moreover, contributory infringement requires an

3    underlying direct infringement.  *Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18

4    Civ. 02960, 2018 WL 5099258, at *5 (C.D. Cal. Oct. 15, 2018).  Plaintiff cannot

5    satisfy either element.

6         **As to the first element,** the Complaint refers to a single "Dance," Compl. ¶ 1,

7    but Plaintiff cannot plausibly allege ownership of it, which is his "burden."  *See*

8    *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011); *Choyce*

9    *v. SF Bay Area Indep. Media Ctr.*, No. 13 Civ. 01842, 2014 WL 2451122, at *4–5

10   (N.D. Cal. June 2, 2014) (dismissing with prejudice complaint with no "well-pled

11   factual allegations . . . that Plaintiff himself owns a valid copyright").  He claims to

12   have created the "Dance" in 1991 for *Fresh Prince*, Compl. ¶¶ 2, 12, 30, but the Ninth

13   Circuit has recognized that a show's *producers* own performances of the actors.[7]  *See*

14   *Garcia v. Google, Inc.*, 786 F.3d 733, 743 (9th Cir. 2015) (en banc) ("The reality is

15   that contracts and the work-made-for-hire doctrine govern much of the big-budget

16   Hollywood and production world."); *Lesley v. Spike TV*, 241 F. App'x 357, 358 (9th

17   Cir. 2007) (actor's performance owned by producer as "work made for hire").

18   Likewise, here, the episode in which Plaintiff alleges the Dance first appeared has a

19   copyright notice listing solely "National Broadcasting Company, Inc."  Cendali Decl.

20   Ex. L.  Thus, the Complaint does not plausibly allege Plaintiff's ownership.

21        **As to the second element,** on a motion to dismiss courts in this Circuit look to

22   whether there is substantial similarity of protectable elements.  *See Rentmeester v.*

23   *Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018).  Assuming *arguendo* for the purposes

24   of this Motion that Plaintiff owns a valid copyright, the works are not "substantially

25   similar" under the two-part analysis used by courts in this Circuit—consisting of the

26   ───────────────

27   [7]  And when Plaintiff tried to register Variation A—which also was performed on a

28   "nationally televised show"—the Copyright Office questioned Plaintiff's
     ownership as it was likely "a work made for hire."  Cendali Decl. Ex. D.

"extrinsic test" and the "intrinsic test." The extrinsic test requires courts to "'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)"—and then compare the "protectable elements that remain" to "corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.* "The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" *Id.* If either test fails, there is no substantial similarity.

A motion to dismiss a copyright claim should be granted where, after comparing the works, the extrinsic test is not satisfied. *See id.*; *Wild v. NBC Universal*, 513 F. App'x 640, 642 (9th Cir. 2013) (affirming dismissal as "Plaintiff cannot satisfy the extrinsic test"). Indeed, the Ninth Circuit routinely affirms dismissal of such decisions. *See, e.g.*, *Rentmeester*, 883 F.3d at 1121 (affirming dismissal where photographs were not substantially similar despite similar subject matter and pose); *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 477 (9th Cir. 2014) (affirming dismissal where "most of the alleged similarities [between films] are not protectable"); *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 694 (9th Cir. 2009) (affirming dismissal because "literary work was not 'substantially similar' to defendants' animated movie"); *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, noninfringement can be determined on a motion to dismiss.").

Here, Plaintiff conclusorily asserts that the "Fresh emote is identical to Ribeiro's The Dance." Compl. ¶ 30. Yet, "the works themselves supersede any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Chey v. Pure Flix Ent't LLC*, No. 16 Civ. 164362, 2017 WL 5479640, at *4 (C.D. Cal. Feb. 10, 2017).

1.   <u>Plaintiff's Movements Are Not Protected by Copyright</u>

The works are not substantially similar for the principal reason that Plaintiff's "Dance" is not protected by copyright and, thus, there is nothing to compare to establish substantial similarity.[8]  ***The Copyright Office already has found that the "Dance" is not copyrightable*** as reflected by its refusal to register Variations B and C (in which the "Dance" is the only alleged choreography).  Cendali Decl. Exs. H, K.[9]

The Copyright Office's determination in this case is consistent with the long-held articulation of copyrightability used by the courts, Congress, and the Copyright Office.  Courts recognize that there are elements of works that are not protectable because they involve the building blocks of creative expression that, if protected, would inhibit the creation of new works.  For example, "words and short phrases" are not protectable.  *Zhang v. Heineken N.V.*, No. 08 Civ. 06506, 2010 WL 11596643, at *4 (C.D. Cal. Sept. 29, 2010).  This is because "even if the word or short phrase is novel or distinctive or lends itself to a play on words," it contains "a *de minimis* amount of authorship."  U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.4(C) (3d ed. 2017).  Similarly, "variations of long-established Chinese word characters" were not protectable as doing so would "effectively give [plaintiff] a monopoly on renditions of these five Chinese characters."  *Zhang*, 2010 WL 11596643, at *5 (dismissal on the pleadings).  "[B]lank forms which do not convey information are not copyrightable" as they are where information is recorded, and do not convey information themselves.  *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990).  And "mere changes in color are generally not subject to copyright protection."  *Express, LLC v. Forever 21, Inc.*, No. 09 Civ. 4514,

---

[8]   That Plaintiff's "Dance" is not protectable under the Copyright Act is an additional reason that Plaintiff cannot satisfy the first prong of the pleading requirements for a claim of copyright infringement: "ownership of a valid copyright."  *Feist*, 499 U.S. 340, 361 (1991).

[9]   Variation A's application remains pending as it is part of a longer *Dancing with the Stars* routine, for which the Office questioned Plaintiff's ownership.  *Id.* Ex. D.

1   2010 WL 3489308, at *6 (C.D. Cal. Sept. 2, 2010).[10]

2          This principle applies with equal force to the field of dance.  The Copyright Act

3   of 1976's list of works of authorship includes only "choreographic works."  17 U.S.C.

4   § 102(a)(4).  As explained in the Compendium of U.S. Copyright Office Practices—

5   the Copyright Office's substantive manual for its staff on the contours of copyright

6   law and Office policies—choreography is the "composition and arrangement of 'a

7   related series of dance movements and patterns organized into a coherent whole.'"

8   Compendium § 805.1 (quoting *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir.

9   1986)).  Thus, the Copyright Office would register a "choreographed music video for

10  a song titled 'Made in the USA'" if the dance "is a complex and intricate work

11  performed by a troupe of professional dancers." *Id.* § 805.5(A).

12         Yet, in recognition that the constituent parts of a choreographic work must be

13  available for others to use in order to foster continued creativity, Congress was

14  explicit that "simple routines" are neither choreographic works nor copyrightable,

15  H.R. Rep. 94-1476, at 53 (1976), and the Copyright Office's Compendium explains

16  that "[i]ndividual movements or dance steps by themselves are not copyrightable."

17  Compendium § 805.5(A).  Thus, although the "Made in the USA" dance above might

18  be registered as a whole, if "[d]uring the chorus, the dancers form the letters 'U, S, A'

19  with their arms . . . the Office would reject a claim limited to the 'U, S, A' gesture."

20  *Id.*  Other examples of unprotectable movements include "the basic waltz step, the

21  _____

22  [10]  *See also Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015)
    (affirming Rule 12(b)(6) dismissal as recipe instructions and name not

23  protectable); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 287 (3d Cir. 2004)
    ("part numbers" not protectable); *CMM Cable Rep, Inc. v. Ocean Coast Props.,*

24  *Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996) (holding "ordinary employment
    phraseology" not protectable); *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F.

25  Supp. 2d 226, 230 (S.D.N.Y. 2000) (not protectable to use "decorative features . . .
    commonly used throughout the jewelry business," such as "precious metals,

26  gemstones, and enamel"); *Skinder-Strauss Assocs. v. Mass. Continuing Legal
    Educ., Inc.*, 914 F. Supp. 665, 674 (D. Mass. 1995) ("a standard calendar, a list of

27  important holidays, a map of Massachusetts, a national map including time zones,
    and a date calculation chart" not protectable); *DBC of N.Y., Inc. v. Merit Diamond*

28  *Corp.*, 768 F. Supp. 414, 416 (S.D.N.Y. 1991) ("Familiar symbols or designs" not
    protectable).

hustle step, the grapevine, or the second position in classical ballet." *Id.* Further, the Copyright Office has made clear that "short dance routines consisting of only a few movements or steps with minor linear or spatial variations, *even if the routine is novel or distinctive*," are not protectable. *Id.* (emphasis added).

This approach makes sense as "[i]ndividual dance steps and short dance routines are the building blocks of choreographic expression, and allowing copyright protection for these elements would impede rather than foster creative expression." *Id.* (citing *Horgan*, 789 F.2d at 161). Thus, "individual elements of a dance are not copyrightable for the same reason that individual words, numbers, notes, colors, or shapes are not protected by the copyright law." *Id.* (citing 37 C.F.R. § 202.1). As discussed above, courts routinely hold that these types of elements are unprotectable, and will dismiss copyright claims based on them at the pleadings stage. *See supra* 10.

In applying this standard, the Copyright Office's Compendium provides the following strikingly on-point example of an unprotectable dance: "Butler Beauchamp is a wide receiver for a college football team. Whenever he scores a touchdown, Butler performs a celebratory dance in the endzone." Compendium § 805.5(A). In this example, although the dance is comprised of multiple movements of multiple body parts, it is not protectable because it "merely consists of a *few movements of the legs, shoulders, and arms*." *Id.* (emphasis added). Likewise, the Copyright Office refused registration of a dance routine by world-renowned modern dance company Pilobolus titled "Five-Petal Flower," which it described as:

On the left-hand side is the silhouette of a woman facing the right side of the screen. On the right-hand side several people quickly tumble onto the stage, forming the silhouette of a five-petal flower with their intertwined bodies. Simultaneously, the silhouette of a giant hand moves from the left to the right side of the screen, and appears to pull at the top of the five-petal flower. The hand then points at the flower formation in a common gesture that means "stay put." The flower formation stays still for the

remainder of the video.  The hand moves back to the left side of the screen and appears to pluck off the head of the woman, who shrugs her arms and slightly kicks her legs outward as if stunned.  Her hands reach for the headless top of her body to feel for the head, and then return to her sides. The giant hand moves over the woman's body and her head reappears; the hand moves again and most of her body disappears underneath the hand. The woman remains near-motionless before the video abruptly ends.

Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14, 2016), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/five-petal-flower.pdf.  Despite the detailed description of Pilobolus' dance, the Copyright Office concluded that the routine was "*de minimis*" because it consisted of "simple movements" that were "insufficient to enable copyright registration."  *Id.* at 4.

The Copyright Office's guidance is critical as the Ninth Circuit has held that, "[w]hen interpreting the Copyright Act," courts should "defer to the Copyright Office's interpretations," *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014), because of its "body of experience and informed judgment."  *Garcia*, 786 F.3d at 742.  For example, the Copyright Office has determined that "examples of works not subject to copyright" include "[w]ords and short phrases."  Material Not Subject to Copyright, 37 C.F.R. § 202.1(a) (2018).  Courts routinely dismiss cases on the pleadings relying solely on this regulation.  *See Zekkariyas v. Universal Music-MGB Songs*, No. 11 Civ. 2912, 2011 WL 13220325, at *2 (C.D. Cal. June 6, 2011) (granting Rule 12(b)(6) motion based solely on regulation); *Zhang*, 2010 WL 11596643, at *5 (quoting regulation for proposition that "'words and short phrases' are not copyrightable"); *see also Southco*, 390 F.3d at 286 (same); *CMM*, 97 F.3d at 1520 (same); *cf. Trenton v. Infinity Broad. Corp.*, 865 F. Supp. 1416, 1426 (C.D. Cal. 1994) (same); *Pelt v. CBS, Inc.*, No. 92 Civ. 6532, 1993 WL 659605, at *3 (C.D. Cal.

1   Oct. 25, 1993) (same).[11]

2   　　Consistent with the foregoing, in *Bikram's Yoga College of India, L.P. v.*

3   *Evolation Yoga, LLC*, the court held that a "Sequence of 26 yoga poses" was too

4   simple to qualify as a choreographic work.  No. 2:11 Civ. 5506, 2012 WL 6548505, at

5   *4 (C.D. Cal. Dec. 14, 2012).  On appeal, the Ninth Circuit acknowledged the

6   touchstones of dance copyright discussed above, but focused its analysis on the fact

7   that the yoga poses were uncopyrightable under 17 U.S.C. § 102(b).  *Bikram's Yoga*

8   *Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1043 (9th Cir. 2015).

9   　　Plaintiff's movements are even simpler, shorter, and less protectable than the 26

10  poses in *Bikram's*, the endzone dance in the Copyright Office's example, and

11  Pilobolus' intricate modern dance piece.  They merely consist of different variations

12  of an arm swing wherein the arms swing side to side while the legs step back and forth

13  to the side, and an arm extension wherein the arms begin bent inwards to the chest and

14  then extend out to the side of the body while stepping twice on each side.  That is why

15  the Copyright Office refused to register Variations B and C, finding that they consist

16  of "simple routine[s] that [are] not registrable as [] choreographic work[s]."  Cendali

17  Decl. Exs. H, K.  To hold otherwise would cause every person who performs these

18  short movements on television, at a wedding, or in any other public place to be

19  susceptible to a copyright infringement claim.

20  　　　　　2.　　Plaintiff's Movements Are Mere Ideas

21  　　In addition to being unprotectable as a building block of expression, the simple

22  movements of arm swings and arm extensions are classic unprotectable ideas.  *See* 17

23  U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . .");

24  *Bikram's*, 803 F.3d at 1040 (sequence of yoga steps unprotectable under Section

25  102(b)).  For example, in *Rentmeester*, the Ninth Circuit affirmed a Rule 12(b)(6)

26

27  [11]  *Cf. Naruto v. Slater*, No. 15 Civ. 04324, 2016 WL 362231, at *4 (N.D. Cal. Jan.

28  28, 2016) (relying on Copyright Office analysis of authorship for copyrightability of photograph taken by a monkey), *aff'd*, 888 F.3d 418 (9th Cir. 2018).

dismissal due to a lack of substantial similarity, holding that the plaintiff did not own the "general 'idea' or 'concept' . . . of [Michael] Jordan in a leaping, *grand jeté-*inspired" movement.  883 F.3d at 1121 (movement at issue shown below); *see also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (dolphins' pose unprotectable).  And in *Reece v. Island Treasures Art Gallery, Inc.*, despite the fact that the parties' works showed the same dance movement (shown below), the court held that the "idea of a hula dancer performing an 'ike movement in the hula kahiko style from the noho position is not protected."  468 F. Supp. 2d 1197, 1206 (D. Haw. 2006) (holding works were not substantially similar).[12]

   

**Rentmeester** Movement
883 F.3d at 1126

**Reece** Movement[13]

### 3.  The Works Are Not Substantially Similar

Once "the unprotectable elements have [been] identified" and "filtered," the works are "considered as a whole."  *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994); *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983)

---

[12] *See also Blehm v. Jacobs*, 702 F.3d 1193, 1201 (10th Cir. 2012) ("a copyright owner has no monopoly over the idea of a muscular doll in a standard pose"); *Cabell v. Sony Pictures Entm't, Inc.*, 425 F. App'x 42 (2d Cir. 2011) ("brandishing a blow dryer as a weapon" and "fighting poses" were "unprotectable ideas"); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) ("Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose."); *Int'l Biotical Corp. v. Associated Mills, Inc.*, 239 F. Supp. 511, 514 (N.D. Ill. 1964) (various poses were unprotectable ideas).

[13] No. 06 Civ. 00489 (D. Haw.) (Dkt. 63-14, Ex. G) (Dkt. 63-15, Ex. H).

(analyzing works "as a whole" to consider similarities "in context").  Here, there are no protectable elements to consider at this stage as the movements are not protectable (as the Copyright Office found) and, even if they were, it is not Plaintiff that owns them.  *See supra* 8.  Without similar protectable elements to compare, dismissal is required.  *See Christianson*, 149 F.2d at 204 (affirming grant of motion to dismiss where only similarities between two maps were unoriginal or mere ideas); *Hall*, 2018 WL 2317548, at *8 (granting Rule 12(b)(6) motion where "only thing that Plaintiffs allege Defendants copied" in Taylor Swift's song was "too brief, unoriginal, and uncreative to warrant protection").

Moreover, as the only part of *Fortnite* that Plaintiff alleges is similar to his movements is the "Fresh" emote, he tacitly concedes that the other elements in *Fortnite* do not infringe his rights—not *Fortnite's* battle format, characters, setting, theme, or mood.  Plaintiff's entire case is based solely on the movements that constitute his alleged "Dance" as he does not allege that the game's avatars resemble him, nor could he.

Although Plaintiff only refers to the "Dance" in his Complaint, he actually sought to register three specific "Variations" with the Copyright Office, each of which is somewhat different.  This only serves to underscore that Plaintiff is seeking to monopolize a broad and chilling swath of movement.  But in any case, each of the variations is different from the "Fresh" emote:

- Variation A features 12 sequential arm swings, the first eight of which are performed horizontally side to side, and the last four of which travel back. The side steps in Variation A are wide and feature the leading leg bending while the other leg is relatively straight.  *In contrast*, Fresh features four sequential arm swings, all of which are performed horizontally to the side, wherein the side steps are relatively narrow and the legs are equally bent. Similarly, the arm extensions in Variation A feature steps that travel back. *In contrast*, the extensions in Fresh feature steps that travel to the side.

- Variation B features 16 sequential arm swings, and then later, another eight arm swings, wherein the arms swinging in front of the body, and below the head.  *In contrast*, Fresh features four sequential arm swings, wherein the arms swing behind the body, with the outward hand extending above the head.  Similarly, Variation B features at least six arm extensions.[14]  *In contrast*, Fresh features four arm extensions.

- Variation C features seven sequential arm swings, performed at a slow tempo, wherein the body rotates to the side with the swinging arm, while the feet take small steps to the side, with a tap of the foot.  *In contrast*, Fresh features four sequential arm swings, performed at a quick tempo, wherein the body remains frontward-facing, and the feet take relatively larger steps to the side, without a tap of the foot.  Similarly, Variation C does not include an arm extension.  *In contrast*, Fresh does.

Especially given the short nature of the movements, any copyright would be thin at best, requiring "virtually identical" copying.  *Century Tile, Inc. v. Hirsch Glass Co.*, 467 F. App'x 651, 652 (9th Cir. 2012).  As a result, "even relatively small differences . . . may exclude copyright infringement."  *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d 1044, 1048 (S.D. Cal. 2007).  Thus, Counts I and II should be dismissed as the works are not substantially similar.

## B.    Plaintiff's Remaining Claims Are Preempted by the Copyright Act

Plaintiff's right of publicity (Counts III and IV) and unfair competition (Counts V and VI) claims are preempted by the Copyright Act and, thus, should be dismissed for this reason alone.  The Copyright Act provides the exclusive remedy for "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright."  17 U.S.C. § 301(a).  A state law claim is preempted if (1) the

---

[14] At approximately 26 seconds into the video, the camera cuts to a shot of host Graham Norton.  Any movements not fixed in the audiovisual recording are not subject to copyright protection.  17 U.S.C. § 102(a).

work is within the type of works protected by copyright and (2) the claim seeks to vindicate rights equivalent to those protected by copyright law. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (right of publicity claim preempted); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212–13 (9th Cir. 1998) (unfair competition claim under Cal. Bus. & Prof. Code § 17200 preempted).

As to the first prong, Plaintiff's non-copyright claims are predicated on the same movements that form the basis of his copyright claim. *See* Compl. ¶¶ 65, 74, 83, 90 (claims based on "use of The Dance"). As choreography is the subject matter of copyright, 17 U.S.C. § 102(a)(4), the first prong is satisfied. *Cusano*, 473 F. App'x at 804 (first prong satisfied by types of works listed in 17 U.S.C. § 102(a)). Indeed, like Plaintiff here, the plaintiff in *Lions Gate Entertainment Inc. v. TD Ameritrade Services Co.* asserted unfair competition claims ***based on the use of the dance lift*** from the film *Dirty Dancing* where Patrick Swayze lifts Jennifer Grey over his head. 170 F. Supp. 3d 1249, 1254 (C.D. Cal. 2016). The claims were preempted. *Id.* at 1264 (dance lift was subject matter of copyright).[15]

As to the second prong, no extra element makes Plaintiff's claims different from a copyright claim as the allegedly infringing acts are described as the quintessential act of copyright infringement: "copying." Compl. ¶¶ 66, 75, 83, 90. Such right of publicity claims, whether based in the common law or California Civil Code § 3344, or unfair competition claims under California Business and Professional Code are preempted. *See Maloney*, 853 F.3d at 1019 (affirming grant of special motion to strike and dismissal of right of publicity and unfair competition claims where use was not "independent of the display, reproduction, and distribution of the copyrighted material"); *Lewis v. Activision Blizzard, Inc.*, 634 F. App'x 182, 184 (9th Cir. 2015) (affirming dismissal due to preemption of statutory right of publicity claim

---

[15] Even if the Dance Step is not copyrightable, it still falls "within the 'subject matter of copyright' for the purposes of preemption analysis" as even unprotected subject matter satisfies the first prong. *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001).

1  based on use in video game); *Laws*, 448 F.3d at 1144 (common law and statutory right

2  of publicity claims preempted).

3  Moreover, the "Supreme Court has extended this principle of copyright

4  preemption to the Lanham Act." *Lions Gate*, 170 F. Supp. 3d at 1264 (citing *Dastar*

5  *Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–38 (2003)).  Plaintiff's

6  federal unfair competition claim is based on Epic Games' "copying" of Plaintiff's

7  alleged "Dance," Compl. ¶ 90, which he argues creates "the false and misleading

8  impression that Defendants were the creators of The Dance." *Id.*; *see also id.* ¶ 36

9  (alleging copying was "to create the false impression that Epic started" the dance).

10  The Supreme Court, however, has held that the Lanham Act's phrase "origin of

11  goods" "refers to the producer of the tangible goods that are offered for sale, and not

12  to the author of any idea, concept, or communication embodied in those goods."

13  *Dastar*, 539 U.S. at 37.  Thus, when a "claim is more accurately conceived of as

14  attacking unauthorized copying," courts in this Circuit routinely dismiss such claims.

15  *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d

16  1246, 1250 (9th Cir. 2017) (affirming dismissal); *Sybersound Records, Inc. v. UAV*

17  *Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (same); *Marcus v. ABC Signature Studios,*

18  *Inc.*, 279 F. Supp. 3d 1056, 1072 (C.D. Cal. 2017) (granting Rule 12(b)(6) motion

19  where plaintiff alleged defendants "have made, and will continue to make a false and

20  misleading designation about the origin of [*Black-ish*] in violation of the Lanham Act"

21  as it was "a duplicate of his copyright claim").[16]  Counts III–VI are preempted and

22  should be dismissed.

23  **C.   Plaintiff's Right of Publicity Claims Violate the First Amendment**

24  Plaintiff's right of publicity claims also are barred by the First Amendment

25  under California's Transformative Use test.  A right of publicity claim does not lie

26

27  [16]  *See also Griffin v. Peele*, No. 17 Civ. 01153, 2017 WL 8231241, at *7 (C.D. Cal. Oct. 18, 2017); *Aquarius Broad. Corp. v. Vubiquity Entm't Corp.*, No. 2:15 Civ.

28  01854, 2016 WL 7165728, at *4 (C.D. Cal. June 30, 2016); *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014).

where a "celebrity likeness is one of the 'raw materials' from which an original work is synthesized" or the "product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." *Winter v. DC Comics*, 30 Cal. 4th 881, 888 (2003).  To apply the test, courts "examine and compare the allegedly expressive work with the [use of the plaintiff's identity] to discern if the defendant's work contributes significantly distinctive and expressive content." *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 61 (2006).  "When the value of the work comes principally from some source other than the fame of the celebrity—from the creativity, skill, and reputation of the artist—it may be presumed that sufficient transformative elements are present to warrant First Amendment protection." *Arenas*, 881 F. Supp. 2d at 1191.  Thus, the "reach of the transformative use defense is broad." *Id.* at 1190.

The *Kirby* decision is particularly instructive.  In that case, the plaintiff—the lead singer in the band "Deee-Lite"—alleged that her likeness had been used in Sega's *Space Channel 5* video game to create a character named Ulala.  144 Cal. App. 4th at 51.  The court held that Ulala was a transformative use, relying primarily on differences between the plaintiff's physical characteristics and Ulala's such as their size, physique, hairstyle, costumes, and outfits. *Id.* at 59.  The court also considered the "setting for the game" as Ulala was "a space-age reporter in the 25th century," and the plaintiff was not. *Id.*

Here, the works are even more transformative than in *Kirby*.  Whereas in *Kirby* the plaintiff alleged various similarities in physical characteristics, Plaintiff has made no allegations that Epic Games' use of his "likeness" goes beyond the "Fresh" emote. Critically, Fresh can be used with any *Fortnite* character, none of which Plaintiff alleges share similar physical characteristics to him. *See supra* 5.  And Plaintiff has not asserted that he has appeared in a similar setting to *Fortnite*, namely he has not fought in a battle royale using weapons to eliminate opponents.  Compl. ¶ 19.  These additional elements make Fresh a transformative use under *Kirby*.  144 Cal. App. 4th

at 59; *see also Sivero v. Twentieth Century Fox Film Corp.*, No. B266469, 2018 WL
833696, at *10 (Cal. Ct. App. Feb. 13, 2018) ("Simpsonized" character with different
physical characteristics than plaintiff was transformative use); *Mitchell v. Cartoon
Network, Inc.*, No. 15 Civ. 5668, 2015 WL 12839135, at *5 (D.N.J. Nov. 20, 2015)
(character who resembled Plaintiff but did "not match the Plaintiff in appearance" and
whose story did not "exactly track Plaintiff's biographical details" was transformative
use). As *Fortnite* does not contain a "literal recreation of Plaintiff" but rather "added
something new," *see id.* at *5–6, Epic Games' alleged use of Plaintiff's alleged
"Dance" is transformative.

Further, Fresh is a miniscule part of *Fortnite*. *See supra* 5. This also supports a
finding of transformativeness. For example, in *Arenas*, the use of a likeness that was
"incidental to the show's plot" was transformative. 881 F. Supp. 2d at 1191 (granting
anti-SLAPP motion). In *de Havilland*, even though the plaintiff's likeness was
realistically depicted, because it constituted only "4.2 percent" of the defendant's
series, the use was transformative. 21 Cal. App. 5th at 864 (reversing denial of anti-
SLAPP motion). And in *Sivero*, the court held that *The Simpsons'* use of the
plaintiff's likeness to create the well-known character of Louie was transformative in
part because Louie was "a minor character in the overall constellation of Simpsons
characters." 2018 WL 833696, at *10.

Finally, Plaintiff concedes that *Fortnite*'s value comes from Epic Games'
creativity, skill, and reputation, unassociated with the movements Plaintiff claims to
own. Compl. ¶¶ 1 (*Fortnite* is a "smash-hit"), 4 (since its release, "*Fortnite* has
become among the most popular video games ever"), 16 ("Prior to releasing *Fortnite* .
. . Epic developed two popular video game franchises"), 26 ("Soon after its release,
*Fortnite* became an international phenomenon."). This too shows its transformative
use. *See de Havilland*, 21 Cal. App. 5th at 864 (transformative use shown by
successfulness of series' "screenwriter, director, and producer"; "[a]ccomplished
writers"; and "[h]ighly-regarded and award-winning actors"); *Sivero*, 2018 WL

833696, at *10 (transformative use as "success of *The Simpsons*" does not derive "primarily from Sivero's fame").  Thus, the right of publicity claims fail under California law.[17]

**D.** ***Rogers v. Grimaldi* Principles Bar Plaintiff's Unfair Competition Claims**

In addition to being preempted by the Copyright Act, Plaintiff's unfair competition claims (Counts V and VI) are barred by the First Amendment, which immunizes the creators of expressive works, like *Fortnite*, *see supra* 5, from such claims.  To assess First Amendment protection in this context, the Ninth Circuit has "adopted the Second Circuit's approach from *Rogers v. Grimaldi*," *E.S.S.*, 547 F.3d at 1099 (citing 875 F.2d 994, 999 (2d Cir. 1989)), which "is relatively straightforward to apply, and is very protective of speech."  *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013).  The approach, which applies to the use of "material . . . in the body of the work," has two prongs:

> [The Lanham Act] will not be applied to expressive works unless [1] the use of the trademark or other identifying material has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, [2] unless the use of [the] trademark or other identifying material explicitly misleads as to the source or the content of the work.

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239–41 (9th Cir. 2013) (internal quotations and alterations omitted).  It applies to both federal and state unfair competition claims. *See E.S.S.*, 547 F.3d at 1099, 1101.

**As to the first prong,** "only the use of a trademark [or other identifying material] with *no* artistic relevance to the underlying work *whatsoever* does not merit First Amendment protection."  *Id.* at 1100 (internal quotation marks omitted).  "In other words, the level of relevance merely must be above zero," and a video game is

---

[17]   Satisfaction of the Transformative Use test also requires dismissal of Plaintiff's unfair competition claim.  *Kirby*, 144 Cal. App. 4th 47, 61.

1   not required to be "about" the identifying material to qualify.  *Id.*  "This black-and-

2   white rule has the benefit of limiting [courts'] need to engage in artistic analysis in

3   this context."  *Brown*, 724 F.3d at 1243.

4          Here, the "emotes" that Epic Games included in *Fortnite*—which include

5   Fresh—are artistically relevant because they directly enhance the gameplay

6   experience by enabling users to celebrate within the game by performing the same

7   kinds of social dances they might perform in real life.  Moreover, even if Plaintiff's

8   alleged "Dance" were protectable—which it is not—the artistic use of a popular dance

9   in a video game is still permissible under *Rogers*, especially where, as here, Epic

10  Games further altered and transformed Plaintiff's alleged "Dance" into something new

11  and different.  Plaintiff even admits artistic relevance by acknowledging that "emotes

12  (dances or movements)" are an essential feature of the game and "fundamental to

13  *Fortnite*'s success."  Compl. ¶ 20, 23.  Plaintiff also admits that *Fortnite*'s inclusion of

14  emotes has become a part of the zeitgeist with professional athletes, young adults,

15  teenagers, and kids "performing emotes."  *Id.*  This is more than sufficient to qualify

16  for First Amendment protection given that even a "tenuous" association satisfies the

17  first prong.  *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170,

18  1176 (C.D. Cal. 2009); *see Brown*, 724 F.3d at 1243 (video game's inclusion of a

19  famous football player's likeness was relevant to the overall goal of creating a realistic

20  football game); *Novalogic*, 41 F. Supp. 3d at 900–01 (finding artistic relevance where

21  use added "to the enjoyment users receive from playing the complicated game").

22         **As to the second prong,** a work can be subject to unfair competition claims

23  only "if the creator uses the mark or material to explicitly mislead consumers as to the

24  source or the content of the work."  *Brown*, 724 F.3d at 1245 (requiring "explicit

25  indication," "overt claim," or "explicit misstatement"; internal quotation marks and

26  alterations omitted).  The "slight risk" that the use of material associated with a

27  plaintiff "might implicitly suggest endorsement or sponsorship to some people is

28  outweighed by the danger of restricting artistic expression" in cases where "there is no

DEFENDANT'S MEMORANDUM OF POINTS        CASE NO. 2:18-cv-10412-CJC (RAOx)
AND AUTHORITIES ISO MOTION TO DISMISS   23

explicit misleading [statement implying such endorsement]." *Id.* (internal citations omitted). Yet, Plaintiff identifies no misleading conduct by Epic Games other than the use of the movements at issue. Further, Fresh is only a tiny part of *Fortnite*, *see supra* 5, which further militates against a finding that the game is explicitly misleading as to its source. *See VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming grant of Rule 12(b)(6) motion where trademark was used in video game because the plaintiff did not allege an "explicit indication, overt claim, or explicit misstatement"). As *Fortnite* is protected by the First Amendment, dismissal is appropriate. *See id.*; *Brown*, 724 F.3d at 1247–48 (affirming grant of motion to dismiss); *Metrano v. Twentieth Century Fox Film Corp.*, No. 08 Civ. 086314, 2009 WL 10672576, at *5 (C.D. Cal. July 16, 2009) (granting Rule 12(b)(6) motion to dismiss).

## E.     Plaintiff Is Not Entitled as a Matter of Law to Several Forms of Relief Requested in the Complaint

The Court need not reach Plaintiff's requested relief as all of his claims should be dismissed. Yet, it also is important to know that in addition to his overbroad claims, Plaintiff also requests remedies that are not available as a matter of law.

***First***, Plaintiff requests "punitive and/or exemplary damages" as a remedy for his Copyright Act and Lanham Act claims. Compl. 21:6, 21:12, 22:9. But such relief is not available. *See Abbywho, Inc. v. Interscope Records*, No. 06 Civ. 0672, 2008 WL 11406099, at *5 (C.D. Cal. Jan. 7, 2008) ("punitive damages . . . cannot be recovered under the Lanham Act"); *Saregama India Ltd. v. Young*, No. 02 Civ. 9856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("Punitive damages are not available under the Copyright Act.").

***Second***, Plaintiff requests "an award of damages" and "punitive and/or exemplary damages" as a remedy for his state law unfair competition claim. Compl. 22:1–2. The Ninth Circuit, however, has held that "California law does not recognize the recovery of damages by individuals for unfair business practices." *Kates v.*

*Crocker Nat'l Bank*, 776 F.2d 1396, 1398 (9th Cir. 1985); *see also Wood v. Midland Credit Mgmt., Inc.*, No. 05 Civ. 3881, 2005 WL 3159639, at *5 (C.D. Cal. July 29, 2005) (holding that "neither nonrestitutionary nor punitive damages are an available form of remedy under California Business and Professions Code § 17200").

   ***Third***, Plaintiff requests "attorney's fees" for his copyright claims.  Compl. 21:7, 21:13.  Yet, the Copyright Act provides that "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412.  Thus, Plaintiff is not entitled to attorney's fees as he did not apply to register his alleged works until December 15, 2018, Compl. ¶ 42, 53, and Fresh was added to *Fortnite* on January 2, 2018.  *Id.* ¶ 29; *see Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (attorney's fees not available where "infringement commenced prior to . . . registration date"); *see also Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16 Civ. 724, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016).[18]  Accordingly, Epic Games requests that this Court dismiss Plaintiff's requests for (a) punitive and exemplary damages on his Copyright Act and Lanham Act claims; (b) general damages on his state law unfair competition claim; and (c) attorney's fees on his copyright claims.

## V.   CONCLUSION

   Epic Games respectfully requests that this Motion be granted in its entirety.  Moreover, as Plaintiff was advised of the bases for this Motion and elected not to amend, Epic Games requests that the dismissal be with prejudice.

---

[18]   Plaintiff also would not benefit from the three-month publication safe harbor as the Variations were first published in 2014, 2014, and 2012 respectively, Cendali Decl. Exs. A, E, I, but he did not apply to register them until 2018.  *Id.* ¶ 2.

1     DATED:  February 22, 2019

2

                        */s/ Dale M. Cendali*

3                         Dale M. Cendali (*pro hac vice* pending)
                        dale.cendali@kirkland.com

4                         Joshua L. Simmons (*pro hac vice* pending)
                        joshua.simmons@kirkland.com

5                         Shanti S. Conway (*pro hac vice* pending)
                        shanti.conway@kirkland.com

6                         Megan L. McKeown (*pro hac vice* pending)
                        megan.mckeown@kirkland.com

7                         KIRKLAND & ELLIS LLP
                        601 Lexington Avenue

8                         New York, NY 10022
                        Telephone: (212) 446-4800

9                         Facsimile: (212) 446-4900

10                        Sharre Lotfollahi (S.B.N. 258913)
                        sharre.lotfollahi@kirkland.com

11                        KIRKLAND & ELLIS LLP
                        333 South Hope Street

12                        Los Angeles, CA  90071
                        Telephone:  (213) 680-8400

13                        Facsimile:  (213) 680-8500

14                        *Attorneys for Defendant Epic Games, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

On February 22, 2019, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP) PLAINTIFF'S COMPLAINT** with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-3.1.1 have been so served.

                                   /s/ *Dale M. Cendali*
                                    Dale M. Cendali